### Decker v. Commonwealth.

(Decided Oct. 26, 1937.)

330

L. V. MATTINGLY for appellant.

HUBERT MEREDITH, Attorney General, and JESSE K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

The appellant, Tommie Decker, was indicted in the Grayson circuit court for the murder of James Whitaker. He was tried and convicted of manslaughter, and sentenced to 10 years in the penitentiary. He has appealed from that judgment, and asks for a reversal on various grounds. It is first insisted that the verdict is against the law and evidence. This calls for a resume of the facts, which, in substance, are as follows:

On the night of April 18, 1936, appellant, in company with Ed Claypool and the deceased, went from Harrison county, Ky., to Grayson county, Ky., in deceased's automobile, and arrived at appellant's home in the latter county about 3 o'clock a. m. on the following morning. It appears that they procured some moonshine whisky, and appellant, and perhaps some other members of the party, became intoxicated. At about 1 o'clock p. m. of the same day, these three boys, together with Dessie Mercer, Vollie Decker, and Nancy Decker, the latter two being a brother and sister of appellant, started on the return trip back to Harrison county in the same automobile, which was a coupe with a rear or rumble seat. Deceased was driving the car, and Nancy Decker, Dessie Mercer, and Ed Claypool were in the front seat with deceased, and Vollie Decker and appellant were riding in the back or rear seat of the car. After they had gone a distance of about one mile on this return trip, and while going over a newly built, rough piece of road, the car bounced, and appellant fell off the car. Deceased did not know that appellant had fallen off the car until his attention was called to it by some one of the occupants of the car, and he stopped it at a distance of about 200 feet from the point where ap-

pellant fell off, and started backing the car toward appellant, presumably for the purpose of letting him get back on the car. Up to this point there is no dispute in the facts; but, as to what occurred after appellant came up to the car, the evidence is somewhat conflicting. Ed Claypool testified that after deceased backed the car up to where appellant was, deceased got out of the car and appellant had his pistol in his hand and had it drawn on the deceased, and asked him why he wanted to throw him off the car, and deceased said, "Tommie, I ain't mad at you, I ain't got nothing against you," and appellant continued to hold the pistol on the deceased, and deceased grabbed it, and he and appellant entered into a scuffle, apparently each trying to recover the pistol, and, while thus grappling for it, it fired, resulting in the immediate death of deceased.

Estill Hazelwood said that at the time of the homicide he was at Alfred Meredith's place, about 50 yards from the scene of the homicide; that he and Mr. Meredith were standing in the front yard, and the car in question came up and stopped about opposite the yard, and then backed up a distance, and he heard somebody talking, and heard one of the girls in the car say, "Tommie don't shoot him," and Tommie said, "Well, what did you want to throw me off the car for?" and James (deceased) said, "Well, I never done it, I ain't mad at you," and Tommie (appellant) says, "Well, I am not mad either." The witness said his view was obstructed by an apple tree, and he did not see deceased and appellant when the pistol fired.

The evidence of Alfred Meredith was, in substance, the same as that of the witness Estill Hazelwood. Meredith said that just before the shot was fired he heard some one about the car say, "Tommie, don't do that there ain't no use to shoot him." He said appellant had his pistol, and he saw it just before deceased stepped off the running board of the car, and deceased acted like he was trying to get hold of the pistol, and after they entered into the scuffle the pistol fired.

Appellant denied having the pistol in his hand or drawn on the deceased when he approached the car at the point where he met it backing up after he had fallen off. He said that when he fell off the car the pistol was under his belt and fell out on the ground, and he picked it up and started up the road toward the car and put the pistol back under his belt before he got to the car, and

when the car stopped the deceased opened the door and started getting out of the car, and said to him, "I'm not mad" and he said to deceased, "I am not mad either"; that deceased then grabbed around him and began to try to take the pistol from under his belt, and they entered into a struggle for possession of the pistol, and fell into the ditch, and when they got up they both had hold of the pistol and it fired, but he did not know which one fired it, and denied that he intentionally shot deceased, if he did so. He was corroborated by his sister, Nancy Decker, who testified that appellant did not have his pistol in his hand at the time he approached the car. Dessie Mercer said she was on the opposite side of the car and could not see whether or not appellant had the pistol in his hand when he approached the car. Appellant's brother, Vollie Decker, who testified for appellant, was asked whether or not appellant had anything in his hand when he approached the car, and he said that if he was "not badly mistaken he had a pistol in his hand." In this respect his evidence tends to corroborate the witness Claypool, who testified that appellant had his pistol in his hand and drawn on the deceased when he approached the car, and also Alfred Meredith, who said he saw the pistol just before deceased stepped off the running board of the car. This witness did not say, nor was he asked, where he saw the pistol, whether it was in appellant's hand or under his belt; but, in view of the distance he was from the car, his statement that he saw the pistol fairly warrants the inference that it was in appellant's hand.

That the evidence is sufficient to support the verdict is too obvious to require any comment or elaboration. The instructions are not complained of, and upon examination of them we find that the court instructed the jury on willful murder, two theories or phases of voluntary manslaughter, to wit, sudden affray or in sudden heat and passion, and wanton or grossly careless use of handling the pistol. The court further instructed the jury on involuntary manslaughter and accidental killing, and further instructed upon reasonable doubt of the degrees of the defenses mentioned in the instruction, and the reasonable doubt of his having been proved guilty of any offense. The jury found him guilty of voluntary manslaughter, but under which voluntary manslaughter instruction it found him guilty, we are not advised; but we find the evidence sufficient to support

the verdict under either of the voluntary manslaughter instructions.

It is also insisted that the court erred in failing to sustain appellant's motion for a new trial because of newly discovered evidence. The alleged newly discovered evidence is, in substance, that a witness was present at the home of appellant just before they started on the return trip, and the deceased was intoxicated and handling a pistol in a boisterous manner in the presence of defendant, which conduct defendant did not seem to resent, or manifest any ill feeling towards deceased because of such conduct. It is doubtful that this evidence was relative or material, but if it be conceded that it was, appellant was present at the time and knew of these facts, and no reason is shown why he did not introduce the witness at the trial. We find no merit in appellant's contention on this point.

It is next insisted that appellant was not given an opportunity to consult his counsel in private because of the conduct of the jailer in persisting on being present when counsel appeared at the jail to confer with appellant in preparation for the trial. The attorney for the commonwealth filed the counter affidavit of the jailer in which the jailer denied the conduct or acts alleged by appellant, and upon this showing the court did not consider this ground sufficient to warrant a new trial. But be that as it may, it is disclosed by the record that when the case was called for trial, appellant answered ready, and made no motion for a continuance, nor did he make any complaint that he was not ready for trial because of the alleged conduct of the jailer or for any other cause, and for this reason he is now precluded from raising the question.

Lastly, it is insisted that the court should have granted appellant a new trial because of the misconduct of the commonwealth's attorney and the admission of incompetent evidence. These two points are intermingled with each other, and will be discussed together.

On cross-examination, the attorney for the commonwealth asked appellant's brother, Vollie Decker, if he stated to Ralph Haycroft, soon after the homicide, that "he (Vollie Decker) was Tommie Decker's brother and that Tommie Decker was the cause of this killing." Counsel for appellant objected to the question, and the court sustained the objection. The attorney for the

commonwealth avowed that if the witness was permitted to answer the question he would say that he made the statement above quoted. And again the attorney for the commonwealth asked Vollie Decker if he did not make the same statement in the presence of Rush Wilcox. The court again sustained the objection to that question, and the attorney for the commonwealth put in the record the same avowal. The attorney for the commonwealth introduced Rush Wilcox and asked him if Vollie Decker made the statement quoted above to him or in his presence, and apparently, before any objection was made and ruled on, the witness answered the question in the affirmative, to which counsel for appellant objected, and the court again sustained objections.

It is insisted for the commonwealth that the question was competent for the purpose of contradicting Vollie Decker. It must be conceded that if such evidence would have contradicted Vollie Decker it would have been competent and the court should have permitted it to go to the jury. See Crawford v. Com., 235 Ky. 368, 31 S. W. (2d) 618. But in view of Vollie Decker's evidence, we are unable to see how the statement of Vollie Decker, that the killing was his brother's fault, could be considered as contradicting his evidence given before the jury. He did not contradict Ed Claypool and Alfred Meredith, who stated that appellant had his pistol in his hand when he approached the car and the deceased. Vollie Decker was asked if appellant had anything in his hand when he approached the car and the deceased, and he said if he was not badly mistaken he had a pistol in his hand. This evidence was more favorable to the commonwealth than to appellant, and the alleged statement made by Vollie Decker, that the killing was his brother's fault, not being materially, if at all, contradictory to the evidence he gave before the jury, the court properly refused to admit the evidence, and it was improper for the attorney for the commonwealth to persist in getting this evidence before the jury despite the court's ruling that it was improper.

But the record discloses that appellant did not ask the court to discharge the jury because of the misconduct of the attorney for the commonwealth, but took his chances on the verdict of the jury.

The case of Bradshaw v. Com., 187 Ky. 297, 219 S. W. 170, 171, is in point. In that case the attorney for

the commonwealth persisted in endeavoring to get incompetent evidence before the jury, notwithstanding the court's ruling that the evidence was incompetent. In that opinion the rule is thus stated:

"Where an attorney undertakes to get before a jury by a declaration that facts exist about which he is not sworn and the proof of which the court has excluded from its consideration, he does so in violation of the rights of the litigant and in contempt of the court. The appellant in the instant case, however, is in no attitude to complain, since the court did everything which he requested it to do in reference to the misconduct of the commonwealth's attorney. It sustained an objection when made, and at the appellant's request admonished the jury not to consider the statement and actions of the attorney for the commonwealth.

"This probably did not have the effect of removing the prejudicial effects of the statement and the actions by which it was accompanied, but the court did all that the appellant requested for the protection of his rights. If the defendant believed that the conduct was prejudicial to him sufficiently to deprive him of a fair trial, he should have asked the court to discharge the jury, and to try him before one which was free from the bias engendered. Having elected, however, to take his chances before the jury, he cannot now be heard to complain."

Appellant having failed to move the court to discharge the jury, it follows that he cannot now be heard to complain of the alleged prejudicial effect of the conduct of the commonwealth's attorney.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.